IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MELISSA FONG, individually and on behalf of similarly situated employees and all aggrieved employees of Defendants in the State of California,<br><br>Plaintiff,<br>v.<br><br>REGIS CORPORATION, d.b.a. MINNESOTA REGIS CORPORATION, and DOES 1-50, inclusive,<br><br>Defendants.<br>_____/ | No. C 13-04497 RS<br><br>**ORDER DENYING MOTION TO REMAND** |

I. INTRODUCTION

On August 21, 2013, plaintiff Melissa Fong filed this putative class action in San Francisco Superior Court against Regis Corporation and numerous Doe defendants.[1] Regis removed to federal court, invoking jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). Fong seeks to remand to state court, arguing that removal was improper. For the following reasons, her motion is denied.

---

[1] Regis Corporation, the named defendant, is a holding company. Regis Corp, a distinct entity, is Fong's actual former employer. This order need not distinguish between the two.

## II.  BACKGROUND

Regis, a Minnesota-based corporation, operates several salons in California.  Plaintiff Melissa Fong worked as a hair stylist at a San Francisco Regis location from June 2000 to February 2013.  She asserts claims on behalf of herself and other current and former Regis employees, alleging that Regis committed numerous violations of California labor law.  Specifically, she avers Regis (1) failed to pay minimum wages, (2) failed to pay agreed-upon wages for all hours worked, (3) failed to provide rest periods, (4) failed to pay wages due upon termination, (5) failed to provide accurate itemized wage statements, (6) engaged in unlawful business practices, and (7) violated Labor Code § 2698 *et seq*.  Fong's complaint sets out three distinct classes of aggrieved California employees: a "stylist class," comprised of all Regis stylists; a "rest period class," consisting of all Regis employees who worked one or more work periods in excess of three and a half consecutive hours without receiving a paid rest break; and a "waiting time penalty class," comprised of all former non-exempt Regis employees who were not paid in full at the time of termination.[2]  Fong's complaint does not identify the putative class size, nor does it plead an amount in controversy.

Regis answered the complaint on September 26, 2013, denying each of Fong's claims.  It then removed to federal court on September 30, 2013, invoking jurisdiction under CAFA.  *See* 28 U.S.C. § 1332(d)(2).  In its notice of removal Regis asserts that this case satisfies each of CAFA's provisions, including the statute's $5,000,000 amount-in-controversy requirement.  Relying on Fong's payroll data from the purported statutory period, and averring that 2,626 current and former employees are potential members of the putative class, Regis extrapolated a combined class damages and attorney fees estimate of $36,526,959.15.

Fong filed this motion to remand, arguing it was improper and speculative for Regis to calculate the amount in controversy solely on the basis of the representative plaintiff's individual employment history.  Regis then filed an opposition brief wherein it recalculated the amount in controversy based on purported average payroll data for the 2,626 employees in question,

---

[2] Each putative class is limited to California-based Regis employees who experienced violations on or after September 3, 2011.

2

1  concluding that under this alternate rubric, at least $19 million is in controversy. Regis maintains,
2  however, that its initial estimate was appropriate.

### III. LEGAL STANDARD

A defendant may remove a civil action from state court to federal court if original jurisdiction would have existed at the time the complaint was filed. *See id.* § 1441(a). The Class Action Fairness Act, enacted in 2005, vests federal district courts with original jurisdiction to hear class action cases satisfying a series of requirements. *See id.* § 1332(d). Under CAFA, the court has jurisdiction, and thus removal is proper, where: (1) the amount in controversy exceeds five million dollars; (2) there is minimal diversity, where at least one plaintiff is diverse from one defendant; and (3) the monetary claims of 100 or more plaintiffs are proposed to be tried jointly on the grounds that the plaintiffs' claims involve common questions of law or fact. *See id.*

"[R]emoval statutes are strictly construed against removal." *Luther v. Countrywide Homes Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance," such that courts must resolve all doubts as to removability in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing that federal jurisdiction exists. *See id.* at 566-67.

### IV. DISCUSSION

Fong does not dispute that her case satisfies CAFA's minimum diversity and class size requirements. She contends, however, that Regis fails to demonstrate the amount in controversy exceeds $5,000,000. When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). "Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego Abrego v. The Dow Chemical Co.*, 443

F.3d 676, at 683 (9th Cir. 2006) (per curiam). Because Fong does not plead a specific amount of damages, Regis must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds $5,000,000. *See Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996).

To meet its burden, Regis is not required to "research, state, and prove the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1147-48 (C.D. Cal. 2010) (citations omitted). "Nonetheless, a court 'cannot base [a finding of] jurisdiction on a [d]efendant's speculation and conjecture.'" *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1118 (C.D. Cal. 2010) (*quoting Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007), *overruled on other grounds*, *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013)). "Rather, a defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum." *Korn*, 536 F. Supp. 2d at 1205 (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)). In service of this obligation, Regis offers two estimates: one in its notice of removal (NOR) and another in its opposition to this motion.

A. First Estimate

Regis avers in its NOR that the amount in controversy is approximately $36,526,959.15. To arrive at this figure, it conducts a series of calculations, several of which are based solely on Fong's individual payroll history. Regis contends that during the statutory period, Fong worked an average of two shifts a week and earned an average of $25.04 per hour. It relies on these figures, provided in a declaration from a Regis human resources director, to extrapolate potential damages for the putative class of 2,626 current and former Regis employees. Emphasizing Fong's allegations that her experiences were "similar" to other putative class members, resulting in individual damages "typical" of her putative classmates, Regis maintains that it is reasonable to rely primarily on Fong's payroll data to estimate the total amount in controversy.

This methodology is unpersuasive. As is apparent from Regis' opposition, which cites an average hourly wage of $10.93 for the putative class members, Fong earned a far higher wage than did her putative classmates. While Fong's complaint alleges that her damages are "typical" of the putative class, Regis cannot in good faith suggest that all members of the three broadly-defined

4

subclasses might recover unpaid wages at the rate of $25.04 per hour. This is especially so considering that, in a wage-and-hour case such as this, the employer is in a superior position to determine average payroll figures for the putative class members. *See Roth*, 799 F. Supp. 2d at 1130. Accordingly, the NOR's calculations of (i) rest break damages and (ii) termination damages, both of which hinge on the false assumption that all injured employees earned $25.04 per hour, are speculative and unconvincing.

The NOR also estimates potential damages flowing from Fong's claim that Regis failed to provide adequate wage statements. While this claim, which results in statutory damages under California Labor Code § 226, does not rely on the aforementioned faulty assumptions about class members' earnings, the NOR's estimate is questionable for other reasons. When an employer violates § 226, the aggrieved employee is entitled to recover $50 for the first infraction and $100 for each subsequent infraction, not to exceed an aggregate penalty of $4,000. Cal. Lab. Code § 226(e)(1). Regis contends that because the statutory period contains forty-eight pay periods, every class member could potentially recover the maximum $4,000 of statutory damages, resulting in a combined total of $10,504,000. This estimate fails, however, to account for the fact that of the 2,626 potential class members employed during the statutory period, 1,334 no longer work for Regis. Unless all 1,334 former employees worked forty-one of the forty-eight pay periods relevant to this case, they would not all be entitled to the statutory maximum. In the same regard, unless all *current* employee putative class members began working for Regis well over one year before this case was filed, they would not each deserve $4,000. In sum, it seems nearly impossible that the putative class could potentially recover $10,504,000 for this claim.

Taken together, these calculations make an unconvincing case that the amount in controversy is nearly as high as Regis asserts. Because the estimated attorney fees are premised on the aforementioned figures, they, too, are unpersuasive.

B. Second Estimate

Standing alone, Regis' NOR fails to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. In opposition to this motion to remand, however,

1  Regis submitted an alternative estimate premised on additional payroll data from the purported
2  statutory period. According to this second calculation, at least $19 million is in controversy.

3  "A court may properly consider evidence the removing party submits in its opposition to
4  remand, even if this evidence was not submitted with the original removal petition." *Altamirano v.*
5  *Shaw Indus., Inc.*, 2013 WL 2950600 (N.D. Cal. 2013) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837,
6  840 n. 1 (9th Cir. 2002)). Accordingly, the infirmities of Regis' removal petition do not necessarily
7  preclude this court from concluding that removal was proper. *See Willingham v. Morgan*, 395 U.S.
8  402, 407 n. 3 (1969) ("[I]t is proper to treat the removal petition as if it had been amended to include
9  the relevant information contained in the later-filed affidavits.").

### *i.    Evidentiary Objections*

Regis' opposition brief, like its removal petition, is accompanied by a declaration from Allison Brown, Regis Corporation's Director of Employee Services. Unlike her first declaration, which only provided payroll data specific to Melissa Fong, Brown's second declaration purports to set forth average wage and hour data for all 2,626 members of the putative class. Some relevant assertions are as follows:

> 7. On September 27, 2013, I caused an inquiry to be conducted to determine the number of California employees of Regis Corp from September 3, 2011 through September 27, 2013, who met the characteristics set forth in Melissa Fong's class action Complaint. That number is 2,626.

> 9. On November 7, 2013, I caused an inquiry to be conducted regarding the average hourly rate and average daily rate for each of these 2,626 employees. This inquiry determined that the average hourly rate for these employees is $10.93. Their average daily rate is $65.95.

> 11. My November 7, 2013 inquiry also determined the number of pay periods worked, for each of the 2,626 employees, from September 3, 2011 to September 3, 2013. During that time, the aggregate number of pay periods worked for all 2,626 employees was 76,477.

> 13. The number of shifts worked per week varies from stylist-to-stylist and salon-to-salon. However, I am informed and believe that most Regis stylists work more than two shifts per week.

6

1   (Brown Declaration, ECF No. 17). Fong objects to these paragraphs, arguing that each
2   contains hearsay and that Brown lacks sufficient personal knowledge of the matters stated
3   therein.
4      While, as described below, Brown's declaration may not be especially probative as to certain
5   claims, it demonstrates sufficient personal knowledge of the matters stated therein. As Director of
6   Employee Services, Brown claims to be responsible for preparation of all Regis payroll data.
7   Accordingly, her declaration is evidence sufficient to support a finding that she has personal
8   knowledge of the company's payroll figures. *See* Fed. R. Evid. 602. Further, while her declaration
9   refers to inquiries conducted within the corporation, these inquiries sought to compile information
10  kept in the normal course of business pertaining to Regis employees. These inquiries do not
11  amount to inadmissible hearsay. *See* Fed. R. Evid. 801; 803. Accordingly, Fong's evidentiary
12  objections are overruled.

    *ii. Rest Break Claim*

14  When an employer fails to provide a required rest break, it is liable for one additional hour of
15  pay at the aggrieved employee's regular rate of compensation. Cal. Lab. Code § 226.7. According
16  to Fong's complaint, Regis maintained a compensation scheme that systemically discouraged
17  employees from taking breaks. Fong alleges that although Regis purported to provide paid breaks,
18  she and other employees were "not paid for *any* breaks taken[.]" (Compl. ¶ 49) (emphasis added).
19  Based on these allegations, Regis assumes that plaintiffs are asserting a 100% violation rate,
20  meaning the employer failed to provide paid rest breaks during all shifts worked by every putative
21  class member. It further assumes that, like Fong, each employee worked two shifts per week. With
22  each shift resulting in a rest break violation, and with each putative class member working an
23  average of sixty-three weeks during the statutory period, Regis contends that each aggrieved
24  employee would be entitled to 126 hours of additional pay. Because the 2,626 putative class
25  members purportedly earned an average of $10.93 per hour, Regis concludes that the amount in
26  controversy for this claim is $3,626,474.68.[3]

---

[3] ($10.93 per hour) x (2 shifts per week) x (63 weeks worked) x (2,626 putative class members) = $3,616,474.68.

Fong disputes this estimate, arguing that it relies on several unfounded assumptions. She first contends that it is unreasonable for Regis to assume a 100% violation rate, reasoning that employees can only recover if their shifts were long enough to warrant a paid rest break in the first place. Although the "rest period class" is limited to employees working shifts in excess of three and one half hours, Brown's declaration provides no information regarding shift length. Nor, Fong points out, does Regis furnish any data regarding the actual number of shifts worked by the 2,626 putative class members. Instead, Regis simply assumes that each employee, like Fong, worked two shifts a week.

Courts in this circuit do not preclude removing parties from, in some circumstances, assuming a 100% violation rate for purposes of estimating the amount in controversy in wage-and-hour class actions. Such assumptions are only appropriate, however, when "supported directly by, or reasonably inferred from, the allegations in the complaint." *Altamirano*, 2013 WL 2950600 at *7 (summarizing how California district courts have addressed this issue); *see also Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (removing defendant met CAFA's amount in controversy where its calculations "were relatively conservative, made in good faith, and based on evidence wherever possible"). As Fong points out, Regis is in a far superior position to assess how many shifts triggered its obligation to provide paid rest periods. In the absence of more specific information regarding shift length, Regis' estimate is unpersuasive. *Cf. Altamirano*, 2013 WL at *7 (crediting defendants' rest period damages estimate where defendant adduced evidence showing a specific number of shifts exceeding ten hours).

Similarly, while Brown provides information about the overall number of pay periods worked, she furnishes no information regarding the actual number of *shifts* worked. Accordingly, Regis' assumption that all employees worked two shifts per week is without support. Regis argues that this estimate is actually "conservative," noting Brown's belief that the average stylist worked more than two shifts per week. When actual data is presumably available, however, Brown's belief is not enough to carry Regis' estimate. *Cf. Behrazfar*, 687 at 1004 (calculations were "based on evidence wherever possible"). Notably, too, Brown's declaration speaks only to her belief that most Regis *stylists* work more than two shifts per week. (Brown Decl. ¶ 13). The rest period class,

however, purports to include "*all* non-exempt" Regis employees. (Compl. ¶ 24) (emphasis added). To the limited extent that Brown's belief is probative, it does not address non-stylist employees who may fall within the rest period class.

Regis thus has again failed to provide a believable estimate of the amount in controversy for plaintiffs' rest break claim under § 226.7. Accordingly, this portion of its estimate cannot be credited.

### iii.     Waiting Time Penalties Claim

Under California law, employers must pay all wages owed within seventy-two hours when employees resign, and immediately where the employee is discharged or laid off. Cal. Lab. Code §§ 201–202. When an employer willfully fails to pay wages upon separation in a timely fashion, the employee is entitled to her normal wages for every day the wages are late, up to a maximum of thirty days. *Id.* § 203. Fong alleges Regis maintained a pattern and practice of failing to pay aggrieved former employees "all wages due and owing[.]" (Compl. ¶¶ 56, 58). Regis takes Fong's allegations to mean that the overdue wages were never paid. Accordingly, it estimates that the 1,334 terminated class members are owed $2,639,319.00.[4]

Fong contends that Regis' calculations are speculative, reasoning that no language in the complaint supports the assumption that each aggrieved employee deserves the statutory maximum of thirty days of additional wages. The complaint alleges, however, that Regis systematically failed to pay "*all*" wages due and owing" upon termination. *Id.* (emphasis added). This broadly-worded allegation reasonably supports the assumption that each former employee might be entitled to the statutory maximum damages. Unlike Regis' rest break estimate, which contains shortcomings that could be remedied with more specific information regarding the number and length of shifts worked, it would be difficult at this stage for Regis to adduce evidence establishing that (i) all putative class members were owed wages upon termination and (ii) that it failed to pay these wages for at least thirty days. *See Coleman*, 730 F. Supp. 2d at 1147-48 (defendant is not required to "research, state, and prove the plaintiff's claims for damages"). Considering the broad allegations in

---

[4] ($65.95 average daily rate) x (30 days of statutory penalties) x (1,334 putative terminated class members) = $2,639,319.00.

9

the complaint, Regis' estimate is persuasive. *See Altamirano*, 2013 WL 2950600 at *12 ("[A]s there is nothing in the complaint or the record to suggest that Defendants paid employees these unpaid wages at some point during the month after they separated from employment, awarding penalties for the entire 30 pay period is reasonable.").

### *iv.    Inadequate Wage Statements*

Fong further alleges that Regis failed to comply with California Labor Code § 226(a), which requires employers to provide employees with itemized wage statements displaying an accurate summary of the hours worked and wages earned. When an employer knowingly and intentionally fails to provide an accurate wage statement, the employee:

> is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Cal. Lab. Code § 226(e)(1). Here, Fong alleges Regis knowingly and intentionally provided its employees with inaccurate wage statements. Fong contends that because Regis underpaid its employees in the first place, the aggrieved employees' wage statements were inherently inaccurate and incomplete.

Fong's complaint contains broadly-worded averments that Regis systematically violated § 226. Unlike her waiting time and rest period claims, Fong does not confine the § 226 claim to a specific sub-class. Based on Fong's broad allegations, Regis reasonably assumes that each wage statement given to each putative class member may have violated § 226. Based on Brown's declaration that the 2,626 class members worked an aggregate of 76,477 pay periods during a purported two-year statutory period, Regis concludes that $6,646,500.00 is in controversy for this claim. Alternately, in the event that Fong's wage statement claim is limited only to a single year, Regis contends that $3,834,000.00 is in controversy for this claim.[5] The latter projection was furnished in supplemental briefing requested by a prior order. (ECF Nos. 19, 20).

---

[5] When a plaintiff demonstrates actual damages flowing from the receipt of an inaccurate wage statement, the limitations period is two years. Absent actual damages, the limitations period is one year. Cal. Lab. Code § 226; Cal. Code Civ. Proc. § 340(a).

10

Regis' second and third projections are more narrowly-tailored than the NOR estimate, which improperly assumed that each employee was entitled to the statutory maximum of $4,000. As Regis explains in supplemental briefing, the renewed estimates were calculated based on the number of applicable pay periods worked by each individual member of the putative class. Fong correctly contends that Regis does not furnish enough data to allow her to replicate defendant's calculations. In this instance, however, where the projections are based upon highly individualized data pertaining to thousands of members of the putative class, the removing party cannot be expected to submit granular proof of every single putative class member's potential damages. *See Coleman*, 730 F. Supp. at 1147-48 (the removing party need not "research, state, and prove the plaintiff's claims for damages") (citations omitted). Unlike the waiting time penalties estimate, which can be recalculated based on summary data provided in Brown's declarations, the wage statement projections cannot be recreated without detailed information about every single putative class member's payroll history. Regis' explanation, accompanied by summary data in Brown's declarations, is sufficiently persuasive to credit the second and third estimates of wage statement damages.[6]

### v.  *Minimum Wage Damages*

Fong also alleges that Regis failed to compensate her and other employees for time spent performing tasks including salon maintenance, product organization, laundry, cleaning, client scheduling, reception, and restroom cleaning. Fong contends that because she was only paid on a "piece-rate" basis as a stylist, earning compensation equal to fifty percent of the service price paid by customers, she was not paid for performing the aforementioned "non-productive" duties during "gap times" in her shift. (Compl. ¶ 32). Averring that Regis knowingly and intentionally (i) denied minimum wages and (ii) failed to pay agreed-upon wages to the putative class members, Fong alleges her employer violated various sections of the Labor Code and California Industrial Welfare Commission Wage Order. *See* Cal. Lab. Code §§ 223, 1194, 1197; IWC Wage Order 2-2001. Defendants who violate these laws are liable for any and all wages past due.

---

[6] Because the amount in controversy is satisfied even where a one-year limitations period is applied to this claim, this order need not address whether a two-year limitations period might ultimately apply. *See* Cal. Lab. Code § 226; Cal. Code Civ. Proc. § 340(a).

While Regis at first declined to project these damages, noting that it is difficult to quantify the amount in controversy with respect to minimum wage claims, its opposition endeavors to furnish such an estimate. Regis fails, however, to provide a reliable projection. Its estimate assumes that all 2,626 class members were forced to engage in unpaid work. Fong's complaint, on the other hand, appears only to allege that stylists were required to do such work. (Compl. ¶ 40). Regis fails to identify how many of the 2,626 putative class members were stylists, thereby belonging in the putative "stylist class." This infirmity alone suffices to render the projection speculative and unpersuasive.

### *vi.  Summary*

Although some of Regis' projections are premised on speculative calculations, others are rooted in reasonable assumptions based on the allegations in the complaint and evidence of payroll figures from the purported statutory period. Setting aside Regis' rest break and minimum wage calculations, which are too speculative, the remaining projections suffice to demonstrate that the amount is controversy is "more likely than not" in excess of $5 million. *See Abrego*, 443 F.3d at 683 (*quoting Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)). Considering only Fong's wage statement and termination payment claims, Regis sets forth evidence tending to show that the amount in controversy exceeds $6 million.[7]

This estimate is further compounded by attorney fees, which are available pursuant to the underlying statutes and thus may be considered for purposes of determining the amount in controversy. *Lowdermilk*, 479 F.3d at 1000. Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages. *See, e.g., Altamirano*, 2013 WL 2950600 at *13 (denying motion to remand after concluding that attorney fees, estimated at twenty-five percent, pushed the amount in controversy above $5 million); *see also Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.").

---

[7] $3,834,000 (projected wage statement penalties, assuming only a one-year statutory period) + $2,639,319 = $6,473,319.00.

12

Even hewing to a more conservative estimate of ten percent, such fees would push the amount in controversy above $7 million, far exceeding CAFA's $5 million requirement. *See* 28 U.S.C. 1332(d).

## V. CONCLUSION

Where, as here, the removing party can easily satisfy the amount in controversy requirement by proffering conservative, reasonable estimates of the plaintiff's potential recovery, it should do so in the first instance. Although the defendant need not "research, state, and prove the plaintiff's claims for damages," *Coleman*, 730 F. Supp. 2d at 1147-48, it must at least provide a reasonable basis for concluding that its estimates are sound. *See Korn*, 536 F. Supp. 2d at 1205. If a removing party proffers overzealous and unsubstantiated projections for the amount in controversy, it invites motion practice that consumes limited judicial resources and delays adjudication on the merits.

Although Regis' notice of removal contained a speculative and inadequate estimate of the amount in controversy, its second estimate, coupled with additional supplemental briefing requested by court order, establishes by a preponderance of the evidence that the amount in controversy exceeds $5 million. Accordingly, the court has original jurisdiction pursuant to the Class Action Fairness Act of 2005. Fong's motion to remand is therefore DENIED.

IT IS SO ORDERED.

Dated: 1/2/14

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE